UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN QUEN LeBLEU,

       Plaintiff,

v.                                                                                          Case No. 1:16-cv-127

COMMISSIONER OF SOCIAL                                          Hon. Ray Kent
SECURITY,

       Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of April 15, 2012. PageID.247. He identified his disabling conditions as bipolar disorder, anxiety and related problems. PageID.251. Plaintiff completed the 8th grade and had past employment as a painter and decorator. PageID.252. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 16, 2014. PageID.63-75. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C.

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she

>is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's present claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 15, 2012, and met the insured status requirements of the Social Security Act through September 30, 2016. PageID.65-66. At the second step, the ALJ found that plaintiff had severe impairments as follows: a mood disorder not otherwise specified; bipolar disorder; posttraumatic stress disorder (PTSD); a panic disorder; antisocial personality disorder; alcohol dependence disorder; degenerative disc disease of the cervical spine and lumbar spine; peripheral neuropathy; Dupuytren's contractures bilaterally; right shoulder degenerative joint disease; and cardiac dysrhythmias. PageID.66. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The ALJ decided at the fourth step that:

> [B]ased on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can climb no ladders, ropes, or scaffolds; the claimant can perform occasional crawling; he can perform no greater than frequent fingering or handling bilaterally; the claimant can perform no overhead reaching with his dominant light upper extremity; he is limited to simple, routine, repetitive tasks; the claimant can have no contact with the public; he can have occasional contact with co-workers and supervision; the claimant can perform no production rate work; he can tolerate no more than one change in the work setting per day; and the claimant will be tardy, need to leave work early, or will otherwise be absent four days per month on a regular and ongoing basis.

PageID.68.

The ALJ made additional findings to determine the impact of plaintiff's substance abuse on his alleged disability. *See* 42 U.S.C § 423(d)(2)(C) (for purposes of obtaining Social

Security benefits, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."); 20 C.F.R. § 404.1535(b)(1) ("The key factor [the Commissioner] will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the Commissioner] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol.").

The ALJ determined that if plaintiff stopped the substance use, he would have the same results through step three of the sequential evaluation. PageID.70. However, the ALJ found that if plaintiff stopped the substance use, he would have a more expansive residual functional capacity (RFC):

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he could climb no ladders, ropes, or scaffolds; the claimant could perform occasional crawling; he could perform no greater than frequent fingering or handling bilaterally; the claimant could perform no overhead reaching with his dominant right upper extremity; he would be limited to simple, routine, repetitive tasks; and the claimant could have occasional contact with the public, co-workers, and supervision.

*Id*.

After making these determinations, the ALJ found that even when plaintiff was not abusing alcohol, he was unable to perform his past relevant work as a painter. PageID.73.

The ALJ made two findings at the fifth step. The ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." PageID.74. However, the ALJ also found

5

that if plaintiff "stopped the substance use," there would be a significant number of jobs in the national economy that he claimant could perform. *Id*. Specifically, the ALJ found that if plaintiff stopped the substance use, he could perform unskilled work in Michigan such as: machine tender (7,800 jobs); line attendant (4,800 jobs); and packager (6,300 jobs). PageID.75.

Finally, the ALJ found that:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

*Id*. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 15, 2012 (the alleged onset date) through October 16, 2014 (the date of the decision). *Id*.

### III. Discussion

Plaintiff set forth six issues on appeal:

**A.   The ALJ's decision was not based on substantial evidence because he failed to give proper weight to the findings and opinion of plaintiff's treating psychiatrist, as required by 20 C.F.R. §404.1527(c) and 416.927(c).**

**B.   The ALJ failed to address factors such as, but not limited to, the length of treatment, frequency of examination, and nature and extent of the treatment relationship, when he rejected the findings and opinion of plaintiff's treating psychiatrist, as required by 20 C.F.R. §§416.927(c).**

Plaintiff contends that the ALJ failed to properly address the opinion of treating psychiatrist Gopal Bedi, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545

7

(6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ evaluated Dr. Bedi's opinion as follows:

> [T]he opinions of Jennifer Richardson, PA-C and Gobal K. Bedi, M.D. (Exhibits 18F; 19F; 21F; 24[F]) have been given little evidentiary weight. They indicated the claimant has had four or more episodes of decompensation within a 12-month period, each of at least two weeks duration. However, as discussed previously, there is simple [sic] no evidence of this in the records. This also shows a lack of understanding of the SSA process. Further, the activities of daily living limits are inconsistent with his [sic] claimant's maintenance of an apartment, prepping simple meals, basic cleaning, and getting himself to appointments. In addition, the extreme social limits are inconsistent with someone who is able to procure his alcohol regularly and manage multiple healthcare providers. The claimant's attempts at evasiveness at the hearing about his alcohol consumption also leads the undersigned to question whether he would be straight with his providers and in turn whether the assessments provided are of when the claimant was sober or not. As such, these opinions have also been given little evidentiary weight.

PageID.73.

In rejecting the doctor's opinion regarding plaintiff's episodes of decompensation, the ALJ referenced his review of the medical record at step three, in which he found that plaintiff "experienced no episodes of decompensation." PageID.67. In reaching this determination, the ALJ stated that while "[t]he claimant has had several emergency room visits with suicidal ideation and alcohol intoxication, as well as one hospitalization (Exhibits 3F; 4F; 7F; 13F; 14F; 25F) . . . none of these instances lasted at least two weeks (Exhibits 3F; 4F; 7F; 13F; 14F; 25F)" and "[a]s such, even if they could be considered episodes of decompensation, they were not of an extended duration." PageID.67-68. The ALJ gave good reasons for the weight assigned to Dr. Bedi's opinion. *See Wilson*, 378 F.3d at 545. Accordingly, plaintiff's claims of error are denied.

        **C.**    **The ALJ did not properly weigh the "other opinion" evidence from plaintiff's therapist and**

**treating physician's assistant in violation of 20 C.F.R. §§ 404.1513(d); 416.913(d) and SSR 06-03p.**

Plaintiff contends that the ALJ did not properly weigh the "other opinion" evidence from PA Richardson and Jessica Robb, LMSW, CAADC. As discussed, *supra*, the ALJ addressed PA Richardson's opinions with those of Dr. Bedi, concluded that both of their opinions suffered from the same flaws, and gave their opinions little weight.

The ALJ addressed Ms. Robb's opinion as follows:

> The opinions of Jessica Robb (Exhibit 16F and testimony) are given little evidentiary weight. Ms. Robb is a social worker and not an "acceptable medical source" (20 CPR 404.1513(a) and 416.913(a)). The undersigned may still consider her opinions in regards to the severity of the claimant's impairments and how they affect his ability to function pursuant to SSR06-03p. However, her findings appear to be based solely on the claimant's subjective complaints, and are not supported by the objective findings in the record. There appears to be quite a difference between the CMH psychiatric records and the Intercare counseling records. CMH, the medicine prescribing authority, is finding the claimant to be doing much better than counseling (Exhibit 12F/2,7,12). These time-periods also coincide with periods of sobriety and form a basis for concluding the claimant functions at a higher level when sober. Further, Ms. Robb's testimony was problematic. She testified to not knowing where the claimant got his alcohol, which seems odd if you are trying to help someone stay off alcohol. Ms. Robb also initially testified that the claimant's benders last one week, but when asked about her marking 16F/3 for 1-2 episodes of decompensation lasting two or more weeks, she then explained that he would be depressed for a week prior to drinking each time. As such, her testimony is given little weight.

PageID.73.

The requirement that the Commissioner give "good reasons" for the weight given to an opinion applies only to "treating sources" (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation). *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007) ("[b]efore determining whether the ALJ violated *Wilson* by failing to properly consider a medical source, we must first classify that source as a

'treating source'"). An "acceptable medical source" refers to one of the sources described in 20 C.F.R. §§ 404.1513(a) and 416.913(a), i.e., licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), 416.902 and 416.913(a). As a social worker, Ms. Robb is considered to be one of the "other" medical sources listing in the regulations. *See* 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) ("other" medical sources include nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists); *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 118-19 (6th Cir. 2010) ("[a]lthough they may constitute other evidence of the claimant's ability to work, social workers are not acceptable medical sources under Social Security regulations"). Because Ms. Robb is not an acceptable medical source, the ALJ was neither required to give her opinions "complete deference" nor required to meet the "good reason" requirement of §§ 404.1527(c)(2) and 416.927(c)(2). *See Smith*, 482 F.3d at 876. Nevertheless, pursuant to Social Security Ruling (SSR) 06-3p[1], opinions from other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." The ALJ provided an evaluation of Ms. Robb's opinions pursuant to SSR 06-3p. While not required to give good reasons for the weight assigned to that opinion, the ALJ did. Accordingly, plaintiff's claim of error is denied.

> **D.    The ALJ did not address all plaintiff's well supported impairments and limitations, including plaintiff's allegations of pain.**

---

[1] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

>   E. **The ALJ did not properly assess plaintiff's credibility, particularly as it pertained to the effect of pain and his non-exertional impairments.**
>
>   F. **The ALJ's residual functional capacity (RFC) findings are not supported by substantial evidence under 20 C.F.R. §§ 416.920 and 416.945, and SSR 98-6p; if the ALJ had properly credited the testimony of record, plaintiff would have been found disabled based on the vocational expert's (VE's) testimony.**

As discussed, the ALJ found that if plaintiff stopped the substance use, he retained the RFC to perform 18,900 jobs in Michigan as a machine tender, line attendant, and packager. PageID.70, 75. In his remaining claims, plaintiff contests this RFC assessment. To place plaintiff's claims in context, the Court begins with plaintiff's alleged disabling impairments:

> The claimant alleges disability due to bipolar disorder, anxiety, a mood disorder not otherwise specified, alcohol dependence, panic disorder with agoraphobia, leg swelling, diabetic neuropathy, Dupuytren's contractures, status post fracture of his right collar bone, status post right shoulder separation, and a heart disorder (Exhibits 2E; 7E; 14E; and testimony). He claims he experiences severe anxiety, severe depression, racing thoughts, suicidal thoughts, and paranoia (Exhibits 3E; 7E; 10E; and testimony). The claimant also alleges he cannot stand to be around people, has panic attacks when he is around people, isolates himself, and does not socialize (Exhibits 3E; 7E; and testimony). Further, he claims he cannot concentrate or focus and gets distracted easily (Exhibits 3E; 10E; and testimony). The claimant also reports he has trouble sleeping at night and sometimes is unable to get out of bed for weeks (Exhibits 3E; l0E; and testimony). In addition, he claims he experiences severe pain and swelling in his legs, as well as severe pain in his neck, shoulder, and back (Exhibits 7E; l0E; and testimony). The claimant alleges his impairments cause difficulties with memory, completing tasks, concentration, understanding, following instructions, and getting along with others (Exhibits 3E; 10E; and testimony). Further, he claims his impairments affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use his hands (Exhibits 3E; 7E; l0E; 14E).

PageID.71.

In evaluating plaintiff's credibility, the ALJ found that he was not entirely credible, being an evasive witness:

> When assessing the claimant's credibility, the undersigned has considered the factors enumerated in SSR 96-7p in addition to the objective medical evidence. For instance, the claimant was somewhat evasive about his alcohol usage during the hearing. He testified to episodic bingeing episodes every six months or so and not being sure how much he was drinking. However, upon being confronted with Exhibits l0F/14 and 13F/32, 58, the claimant conceded he recently has been bingeing once every two months or so. Further, upon questioning about how much he was drinking, he conceded he was consuming two fifths of alcohol during these weeklong benders. When asked where he was getting the money for his alcohol the claimant said he was borrowing it from people. When the undersigned pointed out he said he only had one friend, per his testimony, he conceded he was getting the money for the alcohol from his ex-girlfriend. He also conceded that she was not aware what he was using the money for.

PageID.72. Nevertheless, the ALJ found that "the claimant is credible concerning the following symptoms and limitations: he cannot stand to be around people, isolates himself, and does not socialize; the claimant cannot concentrate or focus and gets distracted easily; he experiences suicidal ideation and paranoia, and the claimant is sometimes unable to get out of bed (Exhibits 3E; 7E; l0E; and testimony)." PageID.68.

Absent alcohol abuse, the ALJ found that plaintiff had the RFC to perform a range of simple, routine, repetitive tasks:

> Even during periods of sobriety, the claimant has occasionally exhibited a sad/dysthymic mood and a flat affect (Exhibits 6F; 12F; 13F). He has also sometimes appeared slightly disheveled (Exhibits 12F; 13F). Further, at times the claimant has been observed to be mildly restless and a little bit irritable (Exhibit 13F). However, the claimant has frequently exhibited a euthymic mood and a broad affect when he is not drinking alcohol (Exhibits 5F; 12F; 13F). His appearance has also often been neat and clean (Exhibits 5F; 12F; 13F). Further, the claimant has routinely been cooperative and has demonstrated good eye contact (Exhibits 5F; 6F; 12F; 13F). His thought content has also consistently been appropriate, his thought process has been logical and coherent, and he has exhibited good insight (Exhibits 5F; 12F; 13F). In addition, the claimant has been fully oriented, and he has denied

> suicidal or homicidal ideation (Exhibits 5F; 6F; 12F; 13F). He has also been given GAF scores indicating he would likely experience no more than moderate symptoms (Exhibits 5F; 12F; 13F). Nevertheless, despite the rather benign mental findings when the claimant abstains from alcohol abuse, the undersigned has considered his other severe mental impairments by finding he would be limited to simple, routine, repetitive tasks and only occasional contact with the public, co-workers, and supervision. The claimant's physical limitations would not change if he stopped the substance abuse.
>
> \* \* \*
>
> In addition, despite his alleged physical limitations, the claimant has been able to ride his bike three miles, and it appears he was riding his bike around town as recently as June of 2014 (Exhibit 15F/2 and testimony). The claimant has also admitted he can lift up to 20 pounds (testimony).

PageID.71-72. Ultimately, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC. PageID.71.

Some of plaintiff's objections to the RFC are without merit, being based on the medical opinions which the ALJ gave little weight. PageID.1493-1494. Plaintiff's complaints of severe pain raised issues of credibility. *See Walters*, 127 F.3d at 531 ("In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Id.* "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that Sixth Circuit has stated that "[t]he ALJ's credibility findings

are unchallengeable," *Payne*, 402 Fed. Appx. at 113, and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff's objects to the ALJ's credibility determination stating that "[l]imited daily activities alone cannot discredit allegations of disabling impairments." PageID.1493. As discussed, *supra*, the ALJ's evaluation of plaintiff's credibility included factors other than daily activities, such as plaintiff's admission that he can lift 20 pounds and his lack of candor regarding the extent of his substance abuse. *See generally*, *Adams v. Commissioner of Social Security*, No. 1:10-cv-503, 2011 WL 2650688 at *1 (W.D. Mich. July 6, 2011) ("[i]n assessing a social security claimant's credibility, the ALJ is not prohibited from applying ordinary techniques of credibility evaluation, which would include consideration of a lack of candor in other areas such as drug abuse") (internal citations omitted).

With respect to the plaintiff's RFC, the ALJ accounted for plaintiff's mental impairments by limiting him to simple, routine, repetitive tasks, and occasional contact with other people (the public, co-workers, and supervisors). PageID.70. In addition, the ALJ accounted for plaintiff's physical restrictions by limiting him to: climbing no ladders, ropes, or scaffolds; occasional crawling; no greater than frequent fingering or handling bilaterally; and, no overhead reaching with his dominant right upper extremity. PageID.70. These limitations were consistent with the ALJ's evaluation of the medical evidence and plaintiff's lack of credibility.

Finally, plaintiff contends that his Dupuytren's contractures "clearly would limit him to less than 'frequent' fingering or handling." PageID.1493. The ALJ recognized this condition as a severe impairment. The few medical records regarding this condition state that plaintiff's fingers had abnormalities, that plaintiff had "contractures, 5th digit [pinky finger] bilaterally," and included a note regarding a surgical referral (but no evidence of consultation or surgery). PageID.910. When asked how the contractures affected the ability to use his hands, plaintiff replied, "[t]hey get in the way of trying to grasp things, like say a broom handle or something like that." PageID.116. He also described the condition as "a hindrance" to his past employment as a painter. *Id*. While plaintiff stated that this condition did not stop him from working, he also stated that the condition "wasn't as bad as it is now." *Id*. Based on this limited evidence regarding the contractures, the ALJ's RFC restricting plaintiff to frequent fingering or handling bilaterally is supported by substantial evidence. For all of these reasons, plaintiff's claims of error will be denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated:  March 29, 2017  /s/ Ray Kent
　　　　　　　　　　　　　　　　　RAY KENT
　　　　　　　　　　　　　　　　　United States Magistrate Judge